**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

CARLOS MARTELL and
CAMILLE GLYNN,

Plaintiffs,

Case No. 2:10-cv-14896

v.

IDS PROPERTY CASUALTY
INSURANCE COMPANY,

Defendant.
__________________________________/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CANCELLING JANUARY 18, 2012 MOTION HEARING**

Plaintiffs have moved for summary judgment against Defendant in this insurance-contract dispute, arguing Defendant wrongfully denied a claim on their homeowners' insurance policy for losses sustained in a fire that destroyed their home. The motion has been fully briefed, and the court determines a hearing to be unnecessary. *See* E.D. Mich. LR 7.1(f)(2). Because Defendant successfully demonstrates an issue of material fact as to whether Plaintiffs intentionally caused the fire that brought about their losses, the court will deny the motion.

**I. BACKGROUND**

Around 11:00 p.m. on the night of June 14, 2010, Plaintiffs' neighbor reported a fire in Plaintiffs' residence at 3750 Christopher Drive in Brighton, Michigan. (Morland Dep. 46:3-47:6, 79:25-80:12, Aug. 18, 2011, Dkt. # 24-8.) Despite the efforts of the Brighton Area Fire Department, the house suffered extensive fire damage and ultimately had to be demolished. (Brighton Area Fire Dep't Invest'n Rep. 2, Dkt. # 24-4

[hereinafter BAFD Invest'n.].) Additionally, two vehicles parked in the driveway of the residence sustained severe heat damage, (*id.* at 14-15), and the basement showed signs of vandalism, including graffiti spray-painted on the wall, a broken television, and damage to Plaintiffs' pool table, countertops, and built-in cabinets, (Adamczyk Dep. 9:4-13:16, Aug. 24, 2011, Dkt. # 24-11). Later investigation revealed that the fire had been intentionally set using incendiary chemicals distributed throughout several rooms of the house. (BAFD Invest'n 13; Invest'n of Fire Loss 13, Dkt. # 31 [hereinafter Adamczyk Invest'n].) Detective Curt Novara of the Livingston County Sheriff Department began a criminal investigation of the fire, but as of yet has been unable to identify any suspects. (Novara Dep. 14:14-19, Sept. 8, 2011, Dkt. # 24-15.)

Plaintiffs were not home at the time of the fire, having left that morning with several of their children for an overnight outing at Cedar Point Amusement Park in Sandusky, Ohio. (C. Martell Aff. ¶¶ 5-7, Dkt. # 24-3.) Plaintiffs and their family received word of the fire from their neighbor as soon as she discovered it, and Plaintiff Glynn successfully urged the neighbor to take their two dogs to safety from their tether in the backyard of the house. (Morland Dep. 47:7-19.) The group then checked out of their hotel and left Sandusky, allegedly arriving on the scene of the fire at approximately 3:00 a.m. on June 15, 2010. (C. Martell Aff. ¶¶ 9-10; Pl.'s Mot. Summ. J. 8, Dkt. # 24.)

At the time of the fire, Plaintiffs' residence was covered by a valid homeowners insurance policy issued by Defendant. (Pl.'s Mot. Summ. J. 5.) Plaintiffs timely notified Defendant of the fire and submitted a proof of loss on October 5, 2010. (*Id.*; Proof of Loss, Dkt. # 24-5.) After an internal and an independent investigation of Plaintiffs' claim, Defendant denied the claim via a letter dated December 6, 2010. In the letter,

Defendant stated that the fire loss was not covered under Plaintiffs' insurance policy because they had failed to prove that it was not intentional and because they had "made misrepresentations regarding issues material to the loss." (Denial Letter 1-2, Dkt. # 24-6.)

On December 9, 2010, Plaintiffs filed this action, alleging Defendant breached their insurance contract by denying their claim. Currently, Plaintiffs seek payment in full of their claim plus penalty interest under Michigan's Uniform Trade Practices Act. *See* Mich. Comp. Laws § 500.2006.[1] In response, Defendant presents several affirmative defenses to justify their nonpayment of the claim. Primarily, Defendant alleges that Plaintiffs were directly or indirectly responsible for the fire, thereby rendering their claim invalid. At the close of discovery, Plaintiffs filed the instant motion for summary judgment.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the court "is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (quoting *Anderson v.*

---

[1]Plaintiffs' amended complaint originally contained two additional counts based on Defendant's refusal to consent to the value of their fire loss or take independent action to determine the amount of loss. (*See* Am. Compl. ¶¶ 17-23, Dkt. # 5.) However, the parties dismissed these counts by a stipulated order entered on November 2, 2011.

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* at 497 (quoting *Anderson*, 477 U.S. at 251-52). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [movant] is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252.

The party seeking summary judgment has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan*, 342 F.3d at 497 (citing *Matsushita*, 475 U.S. at 587).

## III. DISCUSSION

Both Plaintiffs and Defendant agree that the viability of Plaintiffs' suit depends upon whether Defendant can establish a valid affirmative defense to Plaintiffs' claim for insurance proceeds. Principally, Defendant advances defenses of arson and fraud and false swearing, both of which are based upon the contention that Plaintiffs intentionally brought about the fire in their home. Defendant has presented enough evidence to create a triable issue as to whether Plaintiffs were responsible for the fire, so the court will deny Plaintiffs' motion for summary judgment.

"It is axiomatic that a person who owns insured property and causes it to burn is not entitled to collect the insurance proceeds." *Lichon v. Am. Universal Ins. Co.*, 459 N.W.2d 288, 291 (Mich. 1990). "Where an arson defense is raised by an insurer, the burden is on the insurer to prove by a preponderance of the evidence that the plaintiff set fire to the building or caused it to be set on fire." *George v. Travelers Indem. Co.*, 265 N.W.2d 59, 62 (Mich. Ct. App. 1978) (citing *Walz v Peninsular Fire Ins. Co.*, 191 N.W. 230, 236 (Mich. 1922)). An insurer may prove arson through circumstantial evidence. *O-So Detroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 502 (6th Cir. 1992) (citing *Peterson v. Oceana Circuit Judge*, 219 N.W. 934, 934-935 (Mich. 1928)). For example, an insurer may carry its burden by presenting independent evidence of the incendiary origins of the fire coupled with circumstantial evidence of the plaintiff's motive and

opportunity to set the fire. *George*, 265 N.W.2d at 62 (citing, *inter alia*, *People v. Dorrikas*, 92 N.W.2d 305, 313-14 (Mich. 1958) (Carr, J., dissenting in part)).

It is undisputed that the fire that destroyed Plaintiffs' home was incendiary. (*See* BAFD Invest'n 13; Adamczyk Invest'n 13.) Plaintiffs have presented credible evidence that they were out of town when the fire was set, and a criminal investigation has not yet yielded any suspects in the matter. However, Defendant adduces several pieces of circumstantial evidence that suggest Plaintiffs had the motive to burn down the house and may have arranged for an unknown individual or individuals to perpetrate the crime while they traveled to Cedar Point:

- Plaintiffs admitting to having tiki torch lamp oil in their garage, stored in a closed cabinet close to the door leading into the home, as well as several containers of gasoline in the garage in plain view, (Glynn-Martell Exam. Under Oath 61:9-20, Aug. 19, 2010, Dkt. # 30-2; C. Martell Exam. Under Oath 177:14-178:14, Dkt. # 30-11);

- Plaintiffs were in serious financial distress in the months leading up to the fire, as evidenced by the following:

    - Plaintiffs were several months behind in their mortgage payments for the Christopher Street premises and unsuccessfully attempted to renegotiate this mortgage with the bank before the fire occurred, (Glynn-Martell Exam. Under Oath 22:7-24:10; Resp. Opp'n Mot. Summ. J. Ex. 11, Dkt. # 30-12);

    - Plaintiffs were behind in mortgage payments on a rental home they also owned (located in Belleville, Michigan) at the time of the fire, (Sommerville Aff. ¶ 7, Dkt. # 30-9);

    - Plaintiff Martell admitted to an internet gambling habit for the six months before the fire of $50 to $100 per month. However, bank records revealed transactions consistent with internet gaming in excess of $175.00 in April of 2010 alone, (Sommerville Aff. ¶ 7);

- Plaintiff Glynn's Capital One Visa credit card was past due in the amount of $2,913.84 as of May 12, 2010, (Glynn-Martell Exam. Under Oath 24:16-22);

- Plaintiff Glynn had taken loans from her 401-K retirement savings in excess of $26,000.00, (Glynn-Martell Exam. Under Oath 20:18-21:6);

- Plaintiffs received a shut-off notice from DTE for the Christopher Drive premises on May 20, 2010, (Sommerville Aff. ¶ 7);

- Plaintiff Glynn and Plaintiffs' sons, Victor and Bryan, agreed during their Statements Under Oath that the family dogs were never left outside (in fact, according to Bryan they were left to defecate inside the home in many instances); however, on the night of the fire, while Plaintiffs were in Sandusky, Ohio, on an overnight trip, the dogs were left tethered outside in the backyard, (Glynn-Martell Exam. Under Oath 39:7-40:11; B. Glynn Dep. 45:1-16, Aug. 8, 2011, Dkt. # 30-4; V. Martell Exam. Under Oath 69:8-23, Sept. 23, 2010, Dkt. # 30-13);

- Although away on an overnight trip, Plaintiffs allegedly did not ensure that the doors to their home were locked, (Sommerville Aff. ¶ 7);

- While some graffiti was observed on one wall of the basement of the premises, there was no evidence that any items of value were stolen from the home, (*id.*);

- No known enemies of Plaintiffs or other persons with motive were identified as potentially being responsible for and having had opportunity to set the fire, (*id.*); and

- In a conversation that occurred within the six-month period preceding the fire, Plaintiff Martell remarked to a neighbor "I can't afford my f***ing house," (Dunatchik Dep. 13:2-15:6, Oct. 17, 2011, Dkt. # 30-5).

(Resp. Opp'n Mot. Summ. J. 8-10, 13, Dkt. # 30.) With these facts, Defendant has shown an issue of material fact as to Plaintiffs' possible involvement in the fire, such that Defendant's affirmative defense of arson should be presented to a jury. *See, e.g.*, *Fitzgerald v. Great Cent. Ins. Co.*, 842 F.2d 157 (6th Cir. 1988) (applying Michigan law and holding insurers presented enough evidence to warrant sending issue of arson to

jury upon showing that the plaintiffs suffered financial problems, that the plaintiff, his child, and dog who lived in insured premises were staying elsewhere on night fire occurred, and there was no evidence of breaking and entering on night of fire, implying plaintiffs had provided arsonist access to building).

Additionally, "[t]he attempt to defraud the company by [an] insured, by the making of false affidavits in relation to loss, is a complete bar to a recovery upon the policy." *Monaghan v. Agric. Fire Ins. Co.*, 18 N.W. 797, 804 (Mich. 1884). If Plaintiffs did in fact have a hand in setting the fire, Defendant may be able to show that representations they made in connection with their claim regarding the cause and origin of the fire were false. Accordingly, Defendant's proffered evidence of Plaintiffs' potential responsibility for the fire is also sufficient to allow its fraud and false swearing defense to survive summary judgment. *See J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1484-1486 (6th Cir. 1991) (discussing elements of Michigan's fraud and false swearing defense in the context of litigation in which insurer also raised arson defense).

Plaintiffs attempt to avoid the denial of their summary-judgment motion by presenting an alternative theory of the origins of the fire. To that end, Plaintiffs argue that a vandal or vandals—perhaps one Cody Simmons, a boy who had recently lived with his mother as a renter in the basement of the Christopher Street house—took advantage of their absence to enter the home, damage the property and fixtures in the basement, and set the fire. They also bring forth evidence to refute Defendant's allegation that they were having severe financial problems, including bank statements, tax returns, and mortgage documents. (*See* Reply Supp. Mot. Summ. J. Exs. 16-24, Dkt. # 32-16 to -24.) However, this is clearly a fact dispute. The evidence before the

court "presents a sufficient disagreement to require submission to a jury" on the issue of Plaintiffs' involvement in the fire. *Anderson*, 477 U.S. at 251-52. Plaintiffs may argue to the factfinder that they did not commit arson or fraud and false swearing, but they have not satisfied the court that the evidence "is so one-sided that [they] must prevail as a matter of law." *Id.* at 252. Accordingly, summary judgment on Plaintiffs' claims for breach of their insurance contract is inappropriate.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiffs' motion for summary judgment [Dkt. # 24] is DENIED.

IT IS FURTHER ORDERED that the January 18, 2012 motion hearing is CANCELLED.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: January 10, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 10, 2012, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\10-14896.MARTELL.DenMotSummJ.set.wpd