**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CARLOS MARTELL and
CAMILLE GLYNN,

      Plaintiffs,

v.                                                 Case No. 10-14896

IDS PROPERTY CASUALTY
INSURANCE CO.,

      Defendant.
                                                 /

**ORDER (1) GRANTING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
REFERENCE TO NON-PROSECUTION, (2) GRANTING DEFENDANT'S
MOTION IN LIMINE TO EXCLUDE REFERENCE TO PENALTY INTEREST,
AND (3) DENYING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE
EVIDENCE OF REPLACEMENT COST VALUE**

Pending before the court are three motions in limine filed by Defendant in this matter, requesting the exclusion of various evidence Plaintiffs may offer for admission at trial. The motions have been fully briefed, and the court determines a hearing is not necessary. *See* E.D. Mich. LR 7.1(f)(2). As described more fully below, the court will grant Defendant's motions in limine to exclude reference to non-prosecution and penalty interest and will deny Defendant's motion in limine to exclude evidence of replacement cost value.

**1. Lack of Criminal Prosecution**

Defendant first seeks to preclude Plaintiffs from alluding at trial to the fact that no criminal prosecution has been instituted based upon the fire that occurred at Plaintiffs' home, which Defendant claims was intentionally set. Defendant argues that any

probative value of such evidence is minimal and far outweighed by the danger of unfair prejudice, *see* Fed. R. Evid. 403, given the differing burdens of proof applicable in criminal and civil actions as well as the extra-judicial considerations known to inform a prosecutor's discretion in initiating criminal proceedings.  The Plaintiffs responded, but merely in form, advancing no understandable theory of relevance while alleging only that it would be prejudicial if Defendant was permitted to infer that Plaintiffs *had* been prosecuted.

The court deduces that the likely reason no intelligible opposition was presented is because none exists.  It is well settled in the Sixth Circuit that evidence of prosecution or non-prosecution of an insured for arson is inadmissible during a civil trial for recovery of insurance proceeds.  *Kelly's Auto Parts, No. 1, Inc. v. Boughton*, 809 F.2d 1247, 1251-53 (6th Cir. 1987). "Facts" such as these represent nothing more complex than the conclusions of others—prosecutors, and perhaps judges or juries—concerning the relevant events.  They are in essence opinions, and prove nothing about the conduct of the parties here.  They are not, in other words, "relevant."  The court will grant Defendant's motion to exclude such evidence.

## 2.  Penalty Interest

Defendant next contends that Plaintiffs should not be allowed to reference at trial their claim for penalty interest.  Under the Michigan Uniform Trade Practices Act, failure to pay an insurance claim on a timely basis is an unfair trade practice that entitles the insured to 12% penalty interest on the claim, starting sixty days after the insured's submission of satisfactory proof of loss, "unless the claim is reasonably in dispute." Mich. Comp. Laws § 500.2006(1), (4).  "The Sixth Circuit has determined that whether a

claim is 'reasonably in dispute' is a matter of law for a court to decide." *Zamplas Johnson, P.C. v. Cincinnati Ins. Co.*, 367 F. Supp. 2d 1101, 1103 (E.D. Mich. 2005) (citing *All Am. Life & Cas. Co. v. Oceanic Trade Alliance Council Int'l, Inc.*, 756 F.2d 474, 482 (6th Cir. 1985)). Because Plaintiffs' penalty interest claim turns upon a legal issue that will be determined by the court, Defendant asserts, mentioning the claim in front of the jury would be unfairly prejudicial and confusing as to the issue of damages. *See* Fed. R. Evid. 403. Plaintiffs do not seem to contest this argument, as their response to Defendant's motion does nothing more than ask that, in determining their claim for penalty interest, the court bear in mind that an insured might be entitled to some penalty interest under section 500.2006 "despite the fact that certain aspects of the claim were in reasonable dispute." *Angott v. Chubb Group Ins.*, 717 N.W.2d 341, 351 (Mich. Ct. App. 2006). Thus, the court will grant Defendant's motion to preclude mention of Plaintiffs' penalty-interest claim at trial.

### 3. Replacement Cost Value

Finally, Defendant requests that the court prevent Plaintiffs from presenting any evidence of the replacement cost value of their dwelling and personal property, arguing that Plaintiffs' insurance policy allows them to recover only the actual cash value. With respect to Plaintiffs' dwelling, the insurance policy provides coverage for "the full cost to repair or replace the damaged part of the dwelling or other structure with similar construction," but states "[w]e will pay only the actual cash value of the damaged property until actual repair or replacement is completed." (Def.'s Mot. in Limine RE: Replacement Cost Value 9, Dkt. # 40.) In a fire policy such as this, Michigan law allows an insurer to so limit an insured's recovery to the actual cash value of the property at

3

the time of loss, except in the event that the amount of loss or damage to the insured property exceeds the amount of liability covered by the policy. Mich. Comp. Laws § 500.2827(3).

Here, there is no dispute that Plaintiffs have not replaced their home, which was demolished after the fire. However, there seems a fact issue as to whether the replacement cost value of the dwelling exceeds Plaintiffs' policy limit, thereby allowing Plaintiffs to recover the replacement cost value instead of the actual cash value. The repair/replacement estimate prepared by Plaintiffs' public adjuster listed the total cost to repair the home as $414,701.90, which is greater than the $376,900.00 policy limit. (*See* Def.'s Mot. in Limine RE: Replacement Cost Value Ex. 1-2.) Defendant avers that this estimate improperly includes $20,505.50 in demolition costs and $30,817.76 for replacement of Plaintiffs' pool, which they allege is covered as an "additional structure" rather than as a component of the dwelling. (*Id.* at 12.) When these amounts are subtracted from the total, Defendant maintains, the replacement value dips below $376,900.00; Plaintiffs are therefore limited to receiving only actual cash value, and introducing evidence of the higher replacement cost value would be unfairly prejudicial and confusing to the jury. *See* Fed. R. Evid. 403. However, Defendant points to neither legal authority nor a section of the insurance policy allowing the court to conclude that, as a matter of law, $51,323.26 should be excluded from Plaintiffs' estimate in the manner Defendant contends. Consequently, the replacement cost value of Plaintiffs' dwelling, and whether that value is more than the limit on liability set forth in Plaintiffs' policy, must be a contested fact issue for the jury to decide. Plaintiffs' proffered

evidence of a marginally higher—by about 10%—replacement cost value of the house, along with these other items, is, in any event, neither unfairly prejudicial nor confusing.

As for Plaintiffs' personal property, Defendant argues that Plaintiffs are again limited to the actual cash value by the terms of their policy, this time because they failed to file a claim for the replacement cost value. Again, in the court's view, this is a question of fact. The relevant provisions of Plaintiffs' policy provides that "[l]oss to personal property will be settled at the replacement cost value of the damaged property at the time of loss." (Def.'s Mot. in Limine RE: Replacement Cost Value 12.) But, unlike the dwelling coverage provisions, there is no express limitation holding the insured to the actual cash value:

> You may make a claim for loss on an actual cash value basis. Then, within 180 days after the loss, you may claim any additional costs in accordance with the replacement cost provision. . . .
>
> Loss will be settled at the actual cash value of the damaged property at the time of loss but not more than the amount required to repair or replace.

(*Id.* at 13.) If Defendant wishes to hold Plaintiffs to the actual cash value of their personal property, it will have to make that argument to the jury; the court finds unavailing Defendant's assertion that the policy renders evidence of the replacement cost value of Plaintiffs' personal property insufficiently probative, unfairly prejudicial, or confusing to the jury. The court will therefore deny Defendant's motion to exclude evidence of the replacement cost value of Plaintiffs' dwelling and personal property.

Accordingly,

IT IS ORDERED that Defendant's motion in limine to exclude reference to non-prosecution [Dkt. # 38] is GRANTED.

5

IT IS FURTHER ORDERED that Defendant's motion in limine to exclude reference to penalty interest [Dkt. # 39] is GRANTED.

IT IS FURTHER ORDERED that Defendant's motion in limine to exclude evidence of replacement cost value [Dkt. # 40] is DENIED.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 20, 2012


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 20, 2012, by electronic and/or ordinary mail.

 s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522